UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| MATHEW S. WHITTAKER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:23-CV-250-CCB |
| | ) |
| MARTIN J. O'MALLEY, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## **OPINION AND ORDER**

This matter comes before the Court on Plaintiff Mathew Whittaker's ("Whittaker") appeal of the Social Security Administration's Decision dated February 17, 2023 (the "Decision") which found that Whittaker was not disabled and not entitled to disability benefits. The parties have briefed the appeal. After considering the briefing and the administrative record, the Court finds, for the following reasons, that the Decision must be remanded.

## **ANALYSIS**

### A. Standard of Review

A claimant who is found to be "not disabled" may challenge the Commissioner's final decision in federal court. This Court must affirm the ALJ's decision if it is supported by substantial evidence and free from legal error. 42 U.S.C. § 405(g); *Steele v. Barnhart*, 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence is "more than a mere scintilla of proof." *Kepple v. Massanari*, 268 F.3d 513, 516 (7th Cir. 2001). It means "evidence a reasonable person would accept as adequate to support the decision." *Murphy v. Astrue*, 496 F.3d 630, 633 (7th Cir. 2007); *see also Diaz v. Chater*, 55 F.3d 300, 305 (7th Cir. 1995) (substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (citation and

quotations omitted). In determining whether there is substantial evidence, the Court reviews the entire record. *Kepple*, 268 F.3d at 516. However, review is deferential. *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). A reviewing court will not "reweigh evidence, resolve conflicts, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003) (quoting *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000)). Nonetheless, if, after a "critical review of the evidence," the ALJ's decision "lacks evidentiary support or an adequate discussion of the issues," this Court will not affirm it. *Lopez*, 336 F.3d at 539 (citations omitted).

While the ALJ need not discuss every piece of evidence in the record, he "must build an accurate and logical bridge from the evidence to [the] conclusion." *Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001). Further, the ALJ "may not select and discuss only that evidence that favors his ultimate conclusion," *Diaz*, 55 F.3d at 308, but "must confront the evidence that does not support his conclusion and explain why it was rejected," *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Ultimately, the ALJ must "sufficiently articulate his assessment of the evidence to assure" the court that he "considered the important evidence" and to enable the court "to trace the path of the ALJ's reasoning." *Carlson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993) (quoting *Stephens v. Heckler*, 766 F.2d 284, 287 (7th Cir. 1985) (internal quotation marks omitted)).

**B. Procedural Background**

Whittaker filed an application for benefits on December 3, 2020, alleging disability beginning on April 1, 2020. The claim was denied initially and on reconsideration. On December 21, 2022, the parties participated in a telephone hearing before an ALJ. The ALJ issued an unfavorable decision on February 17, 2023. (R. 17-27). This appeal followed.

2

## C. The ALJ's Decision

A person suffering from a disability that renders him unable to work may apply to the Social Security Administration for disability benefits. *See* 42 U.S.C. § 423(d)(1)(A) (defining disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months"). To be found disabled, a claimant must demonstrate that his physical or mental limitations prevent him from doing not only his previous work, but also any other kind of gainful employment that exists in the national economy, considering his age, education, and work experience. § 423(d)(2)(A). If a claimant's application is denied initially and on reconsideration, he may request a hearing before an ALJ. *See* 42 U.S.C. § 405(b)(1).

An ALJ conducts a five-step inquiry in deciding whether to grant or deny benefits: (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether he has the residual functional capacity to perform his past relevant work, and (5) whether the claimant is capable of performing any work in the national economy. *See* 20 C.F.R. § 404.1520(a*); Zurawski v. Halter*, 245 F.3d 881, 885 (7th Cir. 2001). If step four is answered in the affirmative, the inquiry stops and the claimant is found to be not disabled. If step four is answered in the negative, the ALJ proceeds to step five.

Here, at step one, the ALJ found that Whittaker did not engage in substantial gainful activity since April 1, 2020, the alleged onset date. At step two, the ALJ determined that Whittaker had the following severe impairments: degenerative disc disease with spondylosis of the lumbar

3

spine, history of a low back sprain, right shoulder impingement, history of right shoulder malunion, bilateral Achilles tendinitis and tendinopathy, headaches, post-traumatic stress disorder, bipolar disorder, and attention deficit hyperactivity disorder. (R. 19). The ALJ further found that Whittaker had the non-severe impairments of sleep apnea, history of a right knee sprain, and history of a left eye injury. (R. 20).

At step three, the ALJ found that Whittaker did not have "an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526)". (R. 20). At step four, the ALJ found that Whittaker had the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) with additional limitations. The claimant could occasionally climb ramps and stairs, could never climb ladders, ropes, scaffolds, could occasionally balance, stoop, kneel, crouch, and crawl, he could occasionally reach overhead with the dominant right upper extremity, he should have avoided concentrated exposure to extreme heat, extreme cold, humidity, vibration, fumes, odors, dusts, gases, poor ventilation, unprotected heights, and unguarded moving machinery, he could tolerate no more than moderate levels of noise (as defined in the Dictionary of Occupational Titles), and he should have avoided all exposure to bright outdoor lighting or flashing lights. In addition, the claimant could understand, remember, and carry out simple instructions and tasks, could make judgments related to simple work related decisions, could respond appropriately to occasional interactions with coworkers and supervisors, he should have avoided work activity requiring interactions with the general public, he could respond appropriately to usual work situations, and he could deal with routine changes in a routine work setting free from fast paced production requirements such as assembly line type work activity, and with few, if any, changes in terms of work setting, tools and processes.

(R. 22).

Also at step four, the ALJ found that Whittaker is unable to perform any past relevant work. (R. 25). However, at step five, the ALJ found that there are jobs that exist in significant numbers in

the national economy that Whittaker can perform. (R. 26). Thus, the ALJ ruled that Whittaker was not disabled, as defined in the Social Security Act. (R. 27).

### *The ALJ's Assessment of Whittaker's Subjective Symptoms*

Whittaker, who suffers from PTSD, reported symptoms such as poor emotional control, anger outbursts, restlessness, nightmares, anxiety with panic attacks, poor ability to get along with others, reliance on others for daily activities and personal care tasks, and difficulty dealing with changes in routine. (R. 23). The ALJ found that the medical evidence supported the alleged symptoms, but that Whittaker's statements concerning the intensity, persistence and limiting effects of his symptoms were not consistent with the evidence in the record (R. 23). The ALJ further found that:

> Mental status examinations revealed many normal findings, including full alertness and orientation, a cooperative attitude, adequate grooming and hygiene, logical and goal directed as to thought process, no looseness of associations, appropriate mood and affect, normal appearance, normal speech, normal memory, normal intellect and cognition, normal thought process, normal associations, good eye contact, no abnormal thought content, good insight, good judgment, good memory, good attention, normal concentration, appropriate fund of knowledge, and denial of harmful thoughts. Even where the claimant had poor mood or affect, the claimant retained normal and full cognition (2F/6, 19; 4F/44, 107, 153; 5F/7, 11, 21, 31, 55; 6F/76, 88; 8F/12). The claimant could use telehealth services, which shows at least some ability to use technology (9F/39; 13F/145). He could assist in the care of his children (6F/111; 9F/111). Treatment helped reduce his symptoms (5F/75; 10F/29).

(R. 24).

Whittaker claims that the ALJ erred because "[s]he did not explain why the presence of both normal and abnormal findings meant that Whittaker would not experience his reported symptoms." (Opening at 8). Whittaker further claims that "the ALJ did not seriously evaluate

5

Whittaker's symptom reports but used the flimsiest of reasons to dismiss them." (*Id*. at 10).

The ALJ's findings regarding Whittaker's subjective complaints are entitled to great deference. *Summers v. Colvin*, 864 F.3d 523, 528 (7th Cir. 2017) ("We give the ALJ's credibility finding 'special deference' and will overturn it only if it is 'patently wrong.'") (quoting *Eichstadt v. Astrue*, 534 F.3d 663, 667-68 (7th Cir. 2008)). Yet, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994); *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). A court may reverse a credibility determination if it finds that the rationale provided is "unreasonable or unsupported." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quoting *Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006)). It is insufficient for an ALJ to merely list a claimant's daily activities as substantial evidence to reject a claimant's subjective complaints because "minimal daily activities" like doing household chores, grocery shopping, and babysitting "do not establish a person is capable of engaging in substantial physical activity." *Clifford*, 227 F.3d at 872 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993)).

The Commissioner notes that the ALJ did not ignore Whittaker's symptom reports or entirely discredit them. Whittaker, however, is correct that the ALJ never explained why the presence of both normal and abnormal findings justified rejecting Whittaker's reports of symptoms. Nor did the ALJ explain how using remote technology and assisting with the care of his own children negated his symptoms. The Seventh Circuit has warned against equating daily activities and child care tasks with the ability to perform full-time work. *Gentle v. Barnhart* 430 F.3d 865, 876 (7th Cir. 2005). Here, Whittaker's symptom complaints were mostly about his mood,

6

motivation. and ability to get along with others. These symptoms impact working outside the home more than they impact attending a telehealth session or helping care for his own children in the home. The ALJ recited the medical history in this case but failed to provide any reasoning or explanation for how she interpreted them, leaving this Court unable to trace her reasoning. As the "logical bridge" between the evidence and the ALJ's conclusion is missing, remand is required. *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).

### *The ALJ's Evaluation of Listing 12.15*

Whittaker claims that he may have met Listing 12.15 which covers trauma and stressor-related disorders. To meet Listing 12.15, Whittaker must satisfy both the criteria of Paragraph A and Paragraph B or C of that Listing. 20 CFR Pt. 404 Subpt. P, App'x 1, §12.15.[1] The ALJ did not

---

[1] 12.15 Trauma- and stressor-related disorders (see 12.00B11), satisfied by A and B, or A and C:

   A. Medical documentation of all of the following:

      1. Exposure to actual or threatened death, serious injury, or violence;
      2. Subsequent involuntary re-experiencing of the traumatic event (for example, intrusive memories, dreams, or flashbacks);
      3. Avoidance of external reminders of the event;
      4. Disturbance in mood and behavior; and
      5. Increases in arousal and reactivity (for example, exaggerated startle response, sleep disturbance).

AND

   B. Extreme limitation of one, or marked limitation of two, of the following areas of mental functioning (see 12.00F):

      1. Understand, remember, or apply information (see 12.00E1).
      2. Interact with others (see 12.00E2).
      3. Concentrate, persist, or maintain pace (see 12.00E3).
      4. Adapt or manage oneself (see 12.00E4).

OR

   C. Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years,

explicitly discuss Paragraph A of the Listing, but decided the issue on the finding that Whittaker did not have "marginal adjustment" and thus neither the Paragraph B nor the Paragraph C criteria were met. (R. 21, 22).  This finding, in turn, appears to be based on the ALJ's earlier finding that Whittaker has only a moderate limitation in the ability to adapt and manage himself.  Whittaker claims that the ALJ used the wrong standard for determining if he met the Paragraph C criteria, and that the Paragraph does not require a finding of a serious or extreme limitation in adapting. Whittaker notes that he has presented evidence that his mental disorder (PTSD) has existed for more than two years, and that he has participated in therapy and psychiatric medication management which has diminished the symptoms and signs of his mental disorder.  Whittaker further claims that there is evidence of marginal adjustment consisting of his inability to work, his lack of motivation to do anything around the house, his inability to function outside of the house without his wife due to anxiety and panic attacks, and his lack of sleep due to nightmares. (R. 41-42, 44, 46, 51, 214, 217).  The ALJ, however, did not discuss any of these points and did not explain how she came to the conclusion that Whitaker did not have "marginal adjustment" as required by Paragraph C.

The Commissioner, in response, first argues that Whittaker failed to establish that he met the Paragraph A criteria.  However, as the ALJ did not get into a discussion of the Paragraph A criteria, the Commissioner cannot now raise that issue in his brief. This Court's function is to evaluate the ALJ's opinion for substantial evidence, not to re-weigh the evidence to determine if a

---

and there is evidence of both:

1. Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
2. Marginal adjustment, that is, you have minimal capacity to adapt to changes in your

person meets a Listing. *Lopez*, *supra*, 336 F.3d at 539.  Whittaker points out that the ALJ recognized that he has PTSD and that the record documents that he has this disorder, leading him to assume that the ALJ implicitly found that he met the criteria of Paragraph A. (R. 19, 458, 459).

With respect to the Paragraph C criteria, the Commissioner recites the regulations that set forth the requirements to meet the Paragraph C criteria, and contends that there is substantial overlap between the Paragraph B criteria and the Paragraph C criteria, apparently implying that the findings related to Paragraph B are sufficient to conclude that Paragraph C is also not met. However, although the Commissioner insists that the ALJ specifically considered Listing 12.15, the Commissioner fails to acknowledge that the ALJ did not discuss the Paragraph C criteria in any detail.  Rather, the ALJ, in three sentences, found that "there is no marginal adjustment", due to Whittaker having only a moderate rating in the Paragraph B criteria. (R. 22).  As Whittaker points out in his reply brief, the ALJ's reasoning is illogical.  As Whittaker explains:

> Plaintiff respectfully requests that the Court directly compare the "paragraph B" and "paragraph C" criteria to confirm that they are in fact two explicitly separate, and not overlapping, standards to meet a mental health listing. It would be illogical that there had to be a greater than moderate limitation to adapting despite treatment to meet the "paragraph C" criteria. If that was the case, "paragraph C" would only ever be met if there was at least one marked to extreme limitation in "paragraph B." That would mean that "paragraph C" would largely be redundant and duplicative, except for cases where there was only a marked limitation to adapting. Nothing in the language of the listing suggests that limitations to adaptation are supposed to be uniquely disabling; instead, "paragraph C" focuses on claimants who have benefitted from treatment but cannot readily adjust to situations outside of their current treatment and support environment. "Paragraph C" only makes sense as a separate test to meet a listing if it allows that a patient may not have any marked or extreme limitations but still requires a fairly sheltered lifestyle with considerable support to avoid the manifestation of more severe environment or to demands that are not already part of your daily life (see 12.00G2c).

limitations.

(Reply at 4).

This Court agrees with Whittaker on this point. Clearly Paragraphs B and C are distinct. Thus, the ALJ should have explicitly discussed the Paragraph C criteria and the evidence supporting the meeting of this criteria. Additionally, the ALJ should have made an explicit finding regarding the Paragraph A criteria. Therefore, remand is required on the issue of whether Whittaker meets or medically equals Listing 12.15.

## **CONCLUSION**

For the reasons set forth above, the Defendant's Decision is REVERSED AND REMANDED for further proceedings consistent with this Opinion. The Clerk is directed to enter judgment in favor of Plaintiff and against Defendant.

SO ORDERED on May 2, 2024.

/s/ *Cristal C. Brisco*
CRISTAL C. BRISCO, JUDGE
UNITED STATES DISTRICT COURT